# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:23-cv-00354-JLK-MEH

KARINA RUIZ ALVAREZ,
KARLA GONZALEZ VELEZ,
GABRIELA MOCTEZUMA CASTILLO, and
AMELIA COLON CHAIREZ,
on their own behalf
and on behalf of all others similarly situated,

Plaintiff,

v.

TELLURIDE RESORT PARTNERS, LLC
d/b/a MADELINE HOTEL & RESIDENCES,
MOUNTAIN PREMIER CLEANING SERVICES, L.L.C., and
ADRIANA SANTA ANA

Defendants.

---

## UNOPPOSED JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

---

COME NOW the named Plaintiffs Karina Ruiz Alvarez, Karla Gonzalez Velez, Gabriela Moctezuma Castillo and Amelia Colon Chairez ("the named Plaintiffs") and Defendants Mountain Premier Cleaning Services, LLC and Adriana Santa Ana ("the MPC Defendants"), who jointly move the Court pursuant to Federal Rule of Civil Procedure 23(e) to certify the proposed settlement class and to approve their proposed settlement of this class action lawsuit. Specifically, the movants[1] seek an Order:

---

[1] Plaintiffs and Defendants Mountain Premier Cleaning Services, LLC and Adriana Santa Ana are parties to the proposed settlement agreement and move jointly for court approval of that settlement. Defendant Telluride Resort Partners, LLC d/b/a Madeline Hotel & Residences is not

1. Granting certification to a Rule 23 Settlement Class defined as:

   all individuals who worked at the Madeline Hotel and Residence pursuant to H-2B guestworker visas acquired by Mountain Premier Cleaning, LLC between February 7, 2020 and the present. All members of the proposed Rule 23 class are identified in Exhibit A to the proposed settlement agreement.

2. Appointing Plaintiffs Karina Ruiz Alvarez, Karla Gonzalez Velez, Gabriela Moctezuma Castillo and Amelia Colon Chairez as Class Representatives;

3. Appointing Andrew H. Turner, Alexander Hood and David Seligman as Class Counsel;

4. Granting preliminarily approval to the proposed Settlement Agreement (Exhibit 1);[2]

5. Approving the attached Rule 23 Notice of Settlement and Exclusion Form (Exhibit 2)

6. Requiring the parties to disseminate the Rule 23 Notice to the identified Class Members in accordance with the Settlement Agreement; and

7. Setting a Final Fairness Hearing at the Court's earliest convenience but at least 150 days after the Court grants preliminary approval to the Agreement.

## I.     Facts And Procedural History

This case arises from Defendants' alleged joint employment of the Plaintiff Mexican H-2B guestworkers and others similarly situated ("H-2B workers") to clean and perform other manual work at the Madeline Hotel and Residences in Telluride, Colorado. Plaintiffs allege that

---

party to the proposed settlement agreement and does not move for its approval. Counsel for movants have conferred with counsel for Telluride Resort Partners, LLC regarding this motion and the relief it requests *via* email dated April 12, 2024. Telluride Resort Partners, LLC does not oppose this motion. D.C.COLO.LCivR 7.1(a).

[2]All Plaintiffs, their counsel, Defendants Mountain Premier Cleaning Services, LLC, Adriana Santa Ana and their counsel have e-signed the Proposed Agreement submitted as Exhibit 1. The CM/ECF system has rejected filing of the PDF containing the electronic signatures. The document filed omitted the signature pages. The parties are willing to paper file the signatures should the Court so require.

Defendants paid the H-2B workers less than the required minimum and overtime wages for this work. Plaintiffs allege that, in numerous respects, the Defendants did not provide the H-2B workers the working conditions and compensation which Defendants Mountain Premier Cleaning Services, LLC and Adriana Santa Ana ("the MPC Defendants") disclosed to them when they recruited them from Mexico to perform this work. Specifically pertinent to this motion, Plaintiffs allege on a classwide basis that the MPC Defendants (1) did not reimburse the H-2B workers for significant work visa and transportation costs they incurred; (2) subjected them to unlawful housing cost deductions from wages; and (3) subjected them to persistent threats of deportation when they complained about such violations of their rights. The MPC Defendants deny each of the foregoing allegations. In addition, Plaintiffs Karina Ruiz Alvarez, Karla Gonzalez Velez and Amelia Colon Chairez allege individually that the MPC Defendants unlawfully retaliated against them including terminating employment, eviction from employer-provided housing, retention of a Social Security card and threats of criminal prosecution, when they complained that their rights had been violated. ECF#1 ¶¶ 11-13. The MPC Defendants deny all such allegations. On February 7, 2023, the named Plaintiffs filed the instant lawsuit against both the MPC Defendants and alleged joint employer Telluride Resort Partners, LLC regarding the foregoing violations, *inter alia*.

On October 2, 2023, the named Plaintiffs filed a companion suit under the Colorado Uniform Fraudulent Transfer Act, seeking an injunction prohibiting Defendant Adriana Santa Ana from transferring her real properties to her daughter in exchange for sham consideration. *Ruiz Alvarez, et. al. v. Santa Ana, et. al.,* 1:23-cv-02571-JLK-MEH. Named Plaintiffs took this step to conserve resources for satisfaction of liabilities they allege the MPC Defendants owe the class they seek to represent. This Court issued the injunction that suit sought and dissolved it upon the MPC

Defendants' deposit of the $400,000.00 proposed settlement fund into the Court. ECF#'s 57, 58. And the Court has entered an order dismissing that suit with prejudice. *Id.*

The parties engaged in extensive investigation, requesting, producing, exchanging and reviewing voluminous timekeeping and wage payment documents. Plaintiffs' counsel spent over fifteen hours reviewing these documents and calculating damages based upon the information they contain. Ex. 4, Turner Decl. ¶16. After extensive arms-length negotiations and a Court-supervised mediation, the Named Plaintiffs and the MPC Defendants reached the proposed settlement agreement, which is the subject of this motion. It should be noted that Telluride Resort Partners, LLC declined to join the settlement mediated by Judge Hegarty on October 24, 2023. The settlement agreement reached there, which is the subject of this motion, resolves claims between the alleged Plaintiff class and the MPC Defendants. It does not resolve nor compensate distinct claims remaining between the named Plaintiffs and other H-2B workers and Telluride Resort Partners, LLC. That remaining Defendant entity is party neither to the proposed Settlement Agreement nor to this motion for approval of the same.

The MPC Defendants have denied and continue to deny any fault, liability, or wrongdoing of any kind and dispute that the evidence developed supports in any way the claims asserted in the Litigation. The MPC Defendants have also denied and continue to deny each and all of the material claims and contentions alleged by the Named Plaintiffs. The MPC Defendants have further denied and continue to deny that the Named Plaintiffs or any Settlement Class Members were harmed or suffered any loss as a result of any of the conduct alleged in the Litigation.

As a result of this investigation, Plaintiffs' counsel have determined that:

a. The MPC Defendants employed 41 members of the alleged Rule 23 Class during the relevant time period.

b. The average expenditure by members of the alleged Rule 23 Class on visa fees, travel and associated lodging and subsistence was $700.00 per season.

c. The MPC Defendants made unlawful deductions of residential rent from the wages of 17 members of the alleged Rule 23 class during the relevant time period. Those rental deductions exceeded permissible levels by approximately $50.00 per week.

d. Threats of deportation against the members of the alleged Rule 23 class were pervasive. While difficult to quantify, they may be adequately compensated by per capita awards of $2,900.00 to each class member.

With this information, the Named Plaintiffs and the MPC Defendants ("the Parties") engaged in an arm's-length settlement negotiation led by experienced counsel.

## II. Summary of the Settlement Terms

### A. Settlement Background and Procedure

The Settlement Agreement provides that, for purposes of settlement only, the Parties agree to conditionally certify a Rule 23 Settlement Class defined as:

> all individuals who worked at the Madeline Hotel and Residence pursuant to H-2B guestworker visas acquired by Mountain Premier Cleaning, LLC between February 7, 2020 and the present. All members of the proposed Rule 23 class are identified in Exhibit A to the proposed settlement agreement.

The Parties agree that, for purposes of this Joint Motion only, the members of the proposed class are sufficiently similarly situated to merit class certification. During the relevant time period, Defendant's payroll and timekeeping records show that each of the proposed class members was:

a. A guestworker employed pursuant to the H-2B visas issued to Mountain Premier Cleaning Services, LLC;

b. Employed at the Madeline Hotel and Residences;

c. Compensated through one common payroll system; and

d. Subject to common policies.

Certification of this similarly situated settlement class is appropriate pursuant to F.R.C.P. 23(b)(3).

Upon this Court certifying the proposed class and preliminarily approving the Settlement Agreement, the Settlement Administrator will send the proposed Class Settlement Notice to each of the 41 members of the class. Ex. 1, Settlement Agreement pg. 12-14. The Parties will request leave to distribute this notice *via* email, text message and postal mail. The Rule 23 Class Notice (attached as Exhibit 2) informs each Class Member of the basic terms of the Settlement Agreement, as well as the estimated damages of the Class Member receiving the Class Notice. The Settlement Agreement also establishes a procedure for Class Members to object to or opt out of the proposed Rule 23 settlement class which would be subject to the Agreement. Ex. 1, Settlement Agreement pg. 13-15. There is no claim procedure which could suppress Rule 23 Class Members' receipt of settlement funds. The Settlement Agreement requires the Settlement Administrator to simply mail checks to the last known address of each Class Member who does not opt-out. Ex. 1, Settlement Agreement pgs. 15-16. No part of the Rule 23 Settlement Fund will revert to Defendant. *Id* at pg. 16-17. After the deduction of 25% in attorneys' fees, $3,804.00 in class administrator fees and $40,000.00 in Representative Enhancement, all remaining Rule 23 Settlement Fund amounts will be distributed to class members via First Class Mail. Uncashed checks will be canceled, and the funds redistributed in a second check to those Rule 23 Class Members who do cash their first round checks. *Id* at pg. 16-17.

Following the close of the sixty (60) day Opt-out Period, the Parties will jointly move for Final Approval of the Settlement Agreement. Should the Settlement Agreement receive Final Approval, the Defendant will mail Settlement Checks to Class Members within twenty-one days after the Settlement Agreement's Effective Date.  Ex. 1, Settlement Agreement pg. 15-16.

### B.    Settlement Terms

The Settlement Agreement provides that the MPC Defendants will make a payment of $400,000.00 which shall fully resolve and satisfy *as against the MPC Defendants only* for (1) the claims of the alleged Rule 23 class; (2) a reasonable service award ($10,000) to each of the four Class Representative Plaintiffs, (3) Plaintiff's Counsel's reasonable attorney's fees and expenses constituting 25% of the total settlement fund; (4) the FLSA visa and travel reimbursement claims of the nine Plaintiffs to have filed consent to sue forms; (5) the individual retaliation claims of Karina Ruiz Alvarez, Karla Gonzalez Velez and Amelia Colon Chairez; and (6) the class administrator's fee of $3,804.00.  Ex. 1, Settlement Agreement pgs. 7-9.  The MPC Defendants made that payment by depositing $400,000.00 in the court registry.  Each Class Member will receive a share of the settlement fund equal to his or her alleged damages as calculated from Defendant's payroll and timekeeping records.

### C.    Settlement Methodology

The proposed Settlement Agreement compensates the Class Members for damages arising from their class claims against the MPC Defendants.  The parties engaged in detailed review of Defendant's payroll and timekeeping documents to ascertain the value of these alleged violations of each class member.   Ex. 3, Turner Decl. ¶¶ 16-20. Each of those alleged violations is compensated in its entirety.  The formulae for the compensation of visa and travel costs, unlawful

rental deductions and threats of deportation were applied uniformly to all members of the class. *Id.* Under the proposed allocation formula, the average Class Member will receive a gross payment of $7,317.07.  Ex. 3, Turner Decl. ¶20.

### 1. Reimbursement of Visa and Travel Costs Borne by Workers

By participating in the H-2B visa program, the MPC Defendants agreed as part of their Application for Temporary Employment Certification that they would abide by the conditions of the H-2B employment contract ("the contract").  29 C.F.R. § 503.16.  That contract guarantees rates of pay, limits deductions from pay, mandates the frequency of pay, regulates transportation and visa fees, and requires compliance with federal, state and local law. *Id.*  H-2B workers must be provided or reimbursed for all visa, border-crossing, and visa-related fees in their first workweek of employment. 29 C.F.R. § 503.16(j).  H-2B workers have the right to be provided or, upon completion of fifty percent of the job order period, reimbursed for reasonable costs incurred for transportation and subsistence (including lodging incurred on the employer's behalf and meals) from the worker's home to the place of employment. *Id.*

Plaintiffs have determined that, on average, the members of the proposed settlement class spent approximately $700.00 per season to pay visa, travel and substance expenses for which they were not reimbursed as required.  The proposed settlement formula would pay each class member $700.00 per season they worked to compensate them for these expenses.  Ex. 3, Turner Decl. ¶17. Because a failure to reimburse visa and travel expenses violates both the H-2B employment contract and the Fair Labor Standards Act,[3] the proposed settlement agreement would also

---

[3] *See e.g., Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228 (11th Cir. 2002).

provide the nine workers who have filed FLSA consent-to-sue forms with "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

## 2.    Reimbursement of Allegedly Unlawful Rental Deductions

Since becoming effective on March 16, 2020, the Colorado Overtime and Minimum Pay Standards Order has restricted the size of deductions which can be taken from the wages of workers in exchange for the employer's provision of housing. 7 CCR 1103-1 ¶(6.2.1)(A). Plaintiffs allege that the rent the MPC Defendants charged to 17 Class Members exceeded the permissible maximum by $50.00 per week. Any rental charges taken in violation of state law violate the H-2B employment contract, which incorporates state law. 29 C.F.R. § 503.16. The proposed settlement would reimburse that $50.00/week to each of the Class Members to whom the MPC Defendants rented housing.

## 3.    Compensation of Attempted Forced Labor

The Trafficking Victims Protection Act prohibits any individual from attempting to obtain the labor or services of another through the abuse or threatened abuse of law or legal process. 18 U.S.C. § 1594(a); 18 U.S.C. § 1589(a)(3). It is unlawful to attempt to obtain labor or services through a scheme, plan or pattern intended to cause a worker to believe that, if they did not perform labor or services, they would suffer serious harm or physical restraint. 18 U.S.C. § 1594(a); 18 U.S.C. § 1589(a)(4). Plaintiffs allege that the MPC Defendants made continual and pervasive threats that Class Members would be deported if they did not accept unlawful conditions of employment. Plaintiffs allege that, in so doing, the MPC Defendants violated the Trafficking Victims Protection Act. 18 U.S.C. § 1595(a). The proposed Settlement Agreement would pay each of the 41 identified class members an equal $2,900.00

9

to compensate these harms.

### 4.    Attorneys' Fees & Costs

The proposed Settlement Agreement would award 25% or $100,000.00 of the $400,000.00 total settlement amount to Plaintiff's counsel as attorney's fees and costs.   Ex. 1, Settlement Agreement pg. 14 ¶D.   "The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class." *Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.,* Civil Action No. 09–cv–01543–REB– KMT, 2010 WL 5387559, at *5–*6 (D. Colo. Dec. 22, 2010)(citing*, inter alia, Vaszlavik v. Storage Technology Corp.,* Case No. 95–B–2525, 2000 WL 1268824, *4 (D. Colo. Mar. 9, 2000) ("requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%– 50% range and is presumptively reasonable.").   The attorneys' fees provided by the proposed Settlement Agreement are below the norm requested, imminently reasonable and should be approved. Ex. 3, Turner Decl. ¶13; Ex. 4, Seligman Decl. ¶5.

### 5.    The Proposed Incentive Payment to the Class Representative Plaintiffs is Appropriate.

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement. *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003); *see also  Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) ("Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class."). When evaluating the reasonableness of an incentive award, courts

may consider factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton,* 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

A $10,000 incentive award for the Class Representative Plaintiff is reasonable in light of the significant value they generated for the class they represent and the extraordinary measures they took to prevent the sale of assets necessary to finance this settlement for that class. The named representative Plaintiffs met with Plaintiff's counsel on sixteen occasions, assisted counsel in preparing for negotiation attended a full day mediation and testified through deposition or affidavit. Ex. 3, Turner Decl. ¶22. The $10,000.00 incentive award proposed is reasonable and justified. *See, Bagoue v. Developmental Pathways, Inc.*, 16-cv-01804, Doc. 149 (D. Colo. Oct. 28, 2020) (awarding $30,000 to a single class representative); *Valverde v. Xclusive Staffing, Inc.,* 16-cv-00671, Doc. 322 (D. Colo. July 20, 2020) (awarding $20,000 to each of five class representatives); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500 to named plaintiffs in a wage and hour case) (citation omitted); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (approving incentive awards of $25,000 to each named plaintiff in a wage and hour case); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award to a single class representative.).

**5.** **The Proposed Agreement Separately Settles the Individual Retaliation Claims of Plaintiffs Karina Ruiz Alvarez, Karla Gonzalez Velez and Amelia Colon Chairez.**

Named Plaintiffs Karla Gonzalez Velez, Karina Ruiz Alvarez and Amelia Colon Chairez pled individual, non-class retaliation claims against the MPC Defendants. ECF#1 ¶¶ 228-255. Named Plaintiff Karla Gonzlaez Velez alleges that, after she complained about failure to pay overtime wages, the MPC Defendants unlawfully retaliated against her by terminating her employment and  unlawfully evicting her from her employer- provided housing immediately and without due process.  Ms. Gonzalez Velez alleges that this retaliatory action left her jobless and homeless in the Telluride winter over 1,500 miles from her permanent residence.  She alleges that she was forced to sleep in her partner's vehicle for three nights while they found new housing. ECF#1 ¶¶ 97-106.

Named Plaintiff Karina Ruiz Alvarez alleges that, after she arrived in the United States, the MPC Defendants unalwfuly obstructed her mobility by seizing and withholding her identity documents, specifically her Social Security card.  ECF#1 ¶¶ 120-126.  Ms. Ruiz Alvarez alleges that the MPC Defendants' actions violated the H-2B contract's required "compliance with 18 U.S.C. 1592(a), with respect to prohibitions against employers, the employer's agents or their attorneys knowingly holding, destroying or confiscating workers' passports, visas, or other immigration documents." 29 C.F.R. § 503.16(z).

Named Plaintiff Amelia Colon Chairez alleges that, after she left her employment with the MPC Defendants, Defendant Adriana Santa Ana and another agent of Defendant Mountain

Premier Cleaning Services, LLC contacted her husband in Mexico, threatening that if she did not return to work, she and he both would be jailed. ECF#1 ¶¶ 127-130.

The MPC Defendants deny each of these allegations in the strongest terms. The Proposed Settlement Agreement settles each of these three individual, non-class claims in exchange for a payment of $20,000.00.

## III. The Court Should Preliminarily Approve the Proposed Settlement and Issue Notice.

"The claims, issues, or defenses of a certified class--or a class proposed to be certified for purposes of settlement--may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The parties have provided detailed information concerning their settlement. Fed. R. Civ. P. 23(e)(1)(A). The Court must now determine whether grounds justify giving notice of the Proposed Settlement to the class members, so that they may decide whether to participate in, opt-out of or object to the Proposed Agreement. Fed. R. Civ. P. 23(e)(1)(B). "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id*.

### A. The Court Will Likely Approve the Proposed Settlement Agreement.

"At the preliminary approval stage, the Court makes a preliminary evaluation of the fairness of the proposed settlement and determines whether the proposed settlement is within the range of possible approval, i.e. whether there is any reason not to notify class members of the proposed settlement and proceed with a fairness hearing." *Alexander v. BF Labs Inc.*, CV 14-

2159-KHV, 2016 WL 5243412, at *9 (D. Kan. Sept. 22, 2016). Settlement approval is appropriate where:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Here, the class representatives and class counsel have adequately represented the class. *Id.* They have diligently calculated and obtained relief for the class members on their claims, which lie against the MPC Defendants. *See* pgs. 7-9 *supra*; Fed. R. Civ. P. 23(e)(2)(C). The Settlement Agreement was negotiated by experienced counsel and its terms are fair and reasonable. Counsel has litigated numerous wage law class actions in Colorado and around the country. Ex. 3, Turner Decl. ¶¶ 7-10. In many of those cases, counsel have negotiated settlements of the plaintiffs' claims on both an individual and a class-wide basis, and are experienced in addressing the issues that arise in complex litigation and settlements. In his experience, Counsel believes the class could have done no better at trial. Ex. 3, Turner Decl. ¶20; Fed. R. Civ. P. 23(e)(2)(C)(i). *See Albu v. Delta Mech. Inc.*, No. 13-cv-03087-PAB-KMT, 2015 U.S. Dist. LEXIS 95485, at *9 (D. Colo. June 30, 2015) (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354) (noting that settlement agreements negotiated at arm's-length by experienced counsel are entitled to "a presumption of fairness").

The proposed Settlement Agreement is not the product of collusion. It was negotiated at arms-length and informed by extensive review of Defendant's voluminous records. *Id* at ¶15;

Fed. R. Civ. P. 23(e)(2)(B).  The proposed Settlement Agreement filed as Exhibit 1 is the lone agreement between the parties.  Ex. 1, Settlement Agreement pg. 21; Fed. R. Civ. P. 23(e)(2)(C)(iv); Fed. R. Civ. P. 23(e)(3).  The parties propose a maximally effective "method of distributing relief to the class" omitting any claims procedure through which class members could default, sending checks by mail to the address[4] of all class members who do not opt-out, and redistributing all funds in any uncashed checks back to those class members who have been reachable, rather than returning them to Defendant.  Ex. 1, Settlement Agreement pg. 7.

The $100,000.00 award of attorney's fees is 25% of the fund, considerably below the standard 33%.  *McNeely v. Natl'l Mobile Health Care, LLC*, No. CIV–07–933–M, 2008 WL 4816510, at *15 (W.D. Okla. Oct.27, 2008) (approving fees equal to 33% of total settlement).  The amount of attorneys' fees awarded by the Settlement Agreement is reasonable.  Fed. R. Civ. P. 23(e)(2)(C)(iii).  The Agreement stipulates that attorney's fees be paid twenty-one days (21) after the Effective Date of the Agreement (when appeal rights lapse). Ex. 1, Settlement Agreement pg. 15-16.  Payments to class members are also due twenty-one (21) days after the Effective Date. Fed. R. Civ. P. 23(e)(2)(C)(iii).

As discussed at length above, the Settlement Agreement compensates each class claim through a single formula applicable to all class members.  Ex. 3, Turner Decl. ¶¶17-19.  "[T]he proposal treats class members equitably relative to each other."  Fed.R.Civ.P. 23(e)(2)(D).  The proposed Settlement Agreement is fair, reasonable and adequate. The Court will likely be able to approve the proposal under Fed. R. Civ. P. 23(e)(2).

---

[4] As their employers, Defendants were required to collect and maintain address information for all class members.  7 CCR 1101-3 ¶7.1.

**B.** **The Court Will Likely Certify the Class For Purposes of Judgment on the Proposed Settlement Agreement.**

Prior to directing notice to class members, the Court must determine that it will likely be able to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii).

At this stage, the Court should make the preliminary determination that the proposed Class satisfies the four requirements of Rule 23(a) and Rule 23(b)(3), subject to a final determination at the fairness hearing. *See* Manual for Complex Litigation § 21.632; *In re Motor Fuel Temperature Sales Prac. Litig.*, 258 F.R.D. 671, 678-80 (D. Kan. 2009); *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 125 (D. Colo. 2016). These requirements are addressed below.

1.    **Numerosit**y

Rule 23(a)(1) requires that a proposed settlement be "so numerous that joinder of all class members is impracticable." "There is no minimum numerical threshold which must be exceeded to satisfy this requirement. Rather, the nature of the particular case, and the nature of the proposed class, are key considerations in determining whether joinder of all parties is not practical." *Gianzero v. Wal-Mart Stores, Inc.*, No. 09-cv-00656-REB-BNB, 2010 U.S. Dist. LEXIS 38426, 2010 WL 1258071, at *2 (D. Colo. Mar. 29, 2010). Here, using Defendants' payroll records, the parties have identified 41 Class Members, a number that satisfies the numerosity requirement. *Consol. Rail Corp. v. Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995) (presuming numerosity at forty members); *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)("generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors."); *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2011 U.S. Dist. LEXIS 58352, 2011 WL 2149602, *5 (D. Colo. June 1, 2011) (joinder of between fifty and three hundred pizza delivery drivers is impractical).

16

### 2. Commonality

The commonality requirement is satisfied when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "This inquiry requires the Court to find only whether common questions of law or fact exist." *In re Motor Fuel*, 258 F.R.D. at 679. Here, the settlement class members are joined by the common questions of law and fact including:

(a) Whether Defendants failed to make appropriate reimbursements of visa and travel expenses;

(b) Whether Defendants imposed excessive rental charges on class members;

(c) Whether Defendants made unlawful threats of deportation;

(d) Whether the alleged conduct violated the H-2B employment contract; and

(e) Whether the alleged conduct violated Colorado law.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The named plaintiff's claims need not be identical to those of other class members; instead this element "requires that representative plaintiffs possess the same interests and suffer the same injuries as the proposed class members." *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 680 (D. Kan. 1991). The typicality requirement is satisfied here because the Named Plaintiffs' claims arise from the same facts and are based on the same legal theories as the claims of members of the proposed settlement class.

For example, during the relevant time period, Defendant's payroll and timekeeping records and policy documents show that each of the proposed class members of was:

a. employed pursuant to the same H-2B employment contract;

b.   assigned to the same workplace under common supervision;

c.   compensated through one common payroll system; and

d.   subject to common policies.

## 4.   Adequacy of Representation

The adequacy requirement is satisfied when "the Representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, Plaintiff's counsel has diligently litigated this case since its inception, and has significant experience in wage and hour class actions in particular, including the resolution of complex cases through settlement. Ex. 3, Turner Decl. ¶¶ 6-11; Ex. 4, Seligman Decl. ¶¶ 8-13.   Accordingly, Plaintiff's counsel is qualified to represent the interests of the Settlement Class. Likewise, there are no conflicts between the Class Representative Plaintiffs and the settlement class.   "Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of representation should be resolved in favor of upholding the class, subject to later possible reconsideration, or the creation of subclasses initially." *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998) (citing to 7A Charles A. Wright et al., *Federal Practice and Procedure*, §1765 at 269 (internal quotes and citations omitted)).

## 5.   Predominance And Superiority

In addition to meeting the prerequisites for class certification under Rule 23(a), a class must also meet one of the three alternative requirements for treatment as a class action under Fed. R. Civ. P. 23(b). Here, Plaintiffs seek class certification under Fed. R. Civ. P. 23(b)(3). Class certification is proper under Rule 23(b)(3) where "the questions of law or fact common to the

members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging identical causes of action would not serve the interests of judicial economy.

Additionally, absent Class Members to date have shown no interest in controlling the litigation of separate actions because no other litigation regarding this controversy has been commenced. The class action vehicle is also the superior method for adjudicating this controversy because it involves the relatively small claims of low-wage workers. Courts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued. *Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2013 U.S. Dist. LEXIS 74529, 2013 WL 2317243, at *2 (D. Colo. May 28, 2013); *Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 482 (D. Colo. 1998).

The Court will likely be able to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii).

> **C.**   **The Court Should Approve the Proposed Notice of Class Action Settlement.**
>
> > 1.   The Proposed Settlement Procedure Provides Due Process Safeguards for the Absent Class Members.

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state" the categories of information set forth in Rule 23(c)(2)(B)(i)–(vii).  If the Court grants preliminary approval of the Settlement, members of the Class will receive a personalized copy of the proposed Notice of

Settlement of Class Action Lawsuit (attached to this Motion as Exhibit 2) by first-class mail, email and/or text message.

The Settlement Administrator shall be provided with last known mailing address information for all putative class members, and will take customary measures to obtain more current address information; notices will be mailed by first-class mail, email and/or text message. Ex. 1, Settlement Agreement, pgs. 12-13. The Settlement Administrator will also re-send the notices to any forwarding addresses and/or attempt to research new addresses from which notices are returned.

**2.     The Notice Clearly Explains the Settlement Terms**

The proposed Notice, attached as Exhibit 2, provides detailed information regarding the claims asserted in this action, the terms and provisions of the proposed settlement, the settlement approval procedure, the procedure to file objections to the settlement and to be heard at the final fairness hearing, the claims process, and the procedure for opting out of the Settlement. Importantly, it informs each individual class member of their personal minimum share of settlement funds, so that they can make an informed decision about participating. Ex. 2, Rule 23 Notice pg. 2 ¶5.

Those class members who timely request to be excluded will not be included in the settlement. Those who do not opt out will release all claims under state wage and hour laws, excluding the Fair Labor Standards Act. Ex. 1, Settlement Agreement pg. 22-24. The proposed notice provides the class members with the precise language of the release to which they could become subject. Ex. 2, Rule 23 Notice pg. 2-3 ¶6. The notice should be approved as fair and accurate.

## IV. Conclusion

For the foregoing reasons, the parties' motion should be granted. The Court should enter an Order:

1. Granting certification to a Rule 23 Settlement Class defined as:

   > all individuals who worked at the Madeline Hotel and Residence pursuant to H-2B guestworker visas acquired by Mountain Premier Cleaning, LLC between February 7, 2020 and the present. All members of the proposed Rule 23 class are identified in Exhibit A to the proposed settlement agreement.

2. Appointing Plaintiffs Karina Ruiz Alvarez, Karla Gonzalez Velez, Gabriela Moctezuma Castillo and Amelia Colon Chairez as Class Representatives;

3. Appointing Andrew H. Turner, Alexander Hood and David Seligman as Class Counsel;

4. Granting preliminarily approval to the proposed Settlement Agreement (Exhibit 1);

5. Approving the attached Rule 23 Notice of Settlement and Exclusion Form (Exhibit 2)

6. Requiring the parties to disseminate the Rule 23 Notice to the identified Class Members in accordance with the Settlement Agreement; and

7. Setting a Final Fairness Hearing at the Court's earliest convenience but at least 150 days after the Court grants preliminary approval to the Agreement.

Respectfully submitted,

*/s/ Andrew H. Turner*
Andrew H. Turner
MILSTEIN TURNER, PLLC
1490 Lafayette Street, Ste. 304
Denver, Colorado 80218
andrew@milsteinturner.com
Tel: 303-305-8230

Alexander N. Hood
David Seligman
TOWARDS JUSTICE
303 E 17TH AVE
Denver, CO 80203
720-441-2236
Alex@towardsjustice.org
David@towardsjustice.org

**Counsel for Plaintiffs**

**/s/ John K. Crisham**
John K. Crisham, #49841
CRISHAM & HOLMAN LLC
2549 West Main Street, Suite 202
Littleton, Colorado 80120
john@crishamholman.com
Tel: (720) 739-2176

Peter A. Ricciardelli, #7442
LAW OFFICE OF PETER A. RICCIARDELLI, P.C.
126 W. Colorado Avenue, #206
P.O. Box 32
Telluride, Colorado 81435
peter@tridelaw.com
Tel: (970) 728-3808

**Counsel for MPC Defendants**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have served the foregoing document on Defendants by electronically filing with the Clerk of Court, using the CM/ECF system which will send notification of such filing to all counsel of record *via* e-mail.

This 16th day of April, 2024.

<div align="center" style="margin-left:40%">

*<u>/s/ Andrew H. Turner</u>*
Counsel for Plaintiffs

</div>